UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHARON K. GRAY                                                                                     PLAINTIFF

     VS.                          Civil No. 2:15-cv-02131-PKH-MEF

CAROLYN W. COLVIN,                                                                         DEFENDANT
Commissioner of Social Security Administration

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sharon K. Gray, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background:

Plaintiff filed her application for DIB on June 13, 2012, alleging an onset date of June 1, 2005, due to back, knee, leg, and neck pain, a heart condition, fibromyalgia, depression, and migraines. (T. 35, 150-53, 192) Plaintiff's claim was denied initially on June 22, 2012, based on res judicata and on reconsideration on July 22, 2012. On December 12, 2012, Administrative Law Judge ("ALJ"), Hon. Edward Starr, remanded Plaintiff's case based upon additional evidence. (T. 69-70) Specifically, the additional evidence was a Medical Source Statement ("MSS") from Michael Miranda, M.D. that was not previously considered relating to Plaintiff's condition prior to her date last insured ("DLI"). Plaintiff's application was again denied initially on February 5, 2013 and on reconsideration on March 26, 2013. (T. 104, 107) Plaintiff then

1

requested an administrative hearing, which was held in front of ALJ Starr, on September 27, 2013. (T. 32-64) Plaintiff testified and was represented by counsel. A Vocational Expert ("VE"), Zack Langley, also testified. (T. 59-62)

At the time of the hearing, Plaintiff was 60 years of age and had the equivalent of a high school education. (T. 35) Plaintiff's request to amend her onset date to June 1, 2010 was approved. (T. 10, 37) Plaintiff's past relevant work ("PRW") experience included working as a convenience store cashier II and a cashier/stocker/sales clerk at Wal-Mart. (T. 18)

On December 12, 2013, the ALJ found Plaintiff had two severe impairments: degenerative disc/joint disease and microvascular cardiac disease with angina. (T. 12) The ALJ determined Plaintiff did not have severe impairments with regards to her allegations of disability due to bilateral hand tremors, migraines and fibromyalgia prior to her DLI. (T. 13) The ALJ further found that Plaintiff did receive some intermittent treatment for depression/anxiety prior to her DLI, but she did not seek formal treatment with a mental health professional. (T. 13) The ALJ concluded that Plaintiff's medically determinable impairments of depression/anxiety disorder did not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and, therefore, were non-severe. (T. 13) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from June 1, 2010, through June 30, 2010, her DLI. (T. 19) The ALJ determined Plaintiff had the RFC to perform light work, except Plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl. (T. 14-15) The ALJ concluded that Plaintiff was capable of performing her PRW as a cashier II and cashier/stocker/sales clerk. (T. 18)

2

Plaintiff appealed this decision to the Appeals Council, but her request for review was denied on May 13, 2015. (T. 1-6) Plaintiff then filed this action on June 30, 2015. (Doc. 1) This matter is before the undersigned for Report and Recommendation. Both parties have filed briefs, and the case is ready for decision. (Docs. 10-11)

## II.   Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological

3

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled at any time from the alleged amended date of onset of June 1, 2010, through the date last insured of June 30, 2010. Plaintiff raises five issues on appeal, which can be summarized as: (A) the ALJ erred in failing to find additional severe impairments; (B) the ALJ erred in his RFC determination; (C) the ALJ improperly weighed the opinion of Plaintiff's treating physician; (D) the ALJ conducted an improper credibility analysis; and, (E) the ALJ erred in step four of his analysis. (Doc. 10, pp. 11-18)

4

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

**<u>Step Two Analysis:</u>**

Plaintiff alleges the ALJ erred by failing to find additional severe impairments of fibromyalgia, gastrointestinal problems, and depression that caused additional limitations on her RFC. (Doc. 10, pp. 11-13) The undersigned has reviewed the record and finds substantial evidence supports the ALJ's step two analysis.

As mentioned above, the Commissioner uses a five-step sequential process to evaluate and determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); See 20 C.F.R. § 404.1520(a)(4). Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. § 404.1520(a)(4). An impairment is "not severe" if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make

this showing. See, e.g., *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

The ALJ noted claimant's testimony that her fibromyalgia began around 2010 or 2011. (T. 12) He further noted there was no credible medical diagnosis of fibromyalgia in the record prior to the DLI of June 30, 2010. (T. 12-13, 18) According to Plaintiff, she was diagnosed with chronic pain syndrome and fibromyalgia that affected her as early as April 2010. (Doc. 10, pp. 11-12) The records provided by Plaintiff, however, only make a mere mention of a diagnosis of chronic pain syndrome and suspected fibromyalgia with no limitations identified. (T. 307, 405-07) Fibromyalgia was not actually diagnosed until July 24, 2012, by Dr. Miranda, almost two years after Plaintiff's DLI, despite the fact that Dr. Miranda was treating Plaintiff during the relevant time period. (T. 624-25)

Plaintiff also alleges "persistent gastrointestinal problems" contribute to her inability to sustain work activity for 8 hours a day. (Doc. 10, pp 12-13) However, Plaintiff did not allege

disability due to any gastrointestinal conditions, and the record does not support such a claim. (T. 192)

Plaintiff also contends the ALJ should have found her depression and anxiety were severe impairments. There are three steps used in evaluating whether a Plaintiff's mental impairment is severe. In applying the special technique the ALJ must first evaluate Plaintiff's symptoms, signs, and laboratory findings to determine whether Plaintiff had a medically determinable impairment. Once the ALJ has established Plaintiff has a medically determinable impairment, the ALJ must rate the functional limitation using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and, decompensation. The ALJ is to rate the degree of functional limitation in the first three areas as none, mild, moderate, marked, and extreme. The ALJ will rate decompensation as none, one or two, three, four or more. After rating the Plaintiff's functional limitation resulting from Plaintiff's impairment, the ALJ determines the severity of the Plaintiff's impairments. If the ALJ rates the degree of claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(b)-(d).

In the present case, the ALJ determined Plaintiff's depressive disorder and anxiety disorder were medically determinable impairments. (T. 13) The ALJ then rated the Plaintiff's functional limitations. The ALJ determined Plaintiff had no limitation regarding her activities of daily living. (T. 13) In making this determination, the ALJ took into consideration Plaintiff's Function

7

Report where she noted she fed and watered her pets, had no problems with personal care, she cooked, cleaned, drove and shopped for food and clothing. (T. 13, 210-17)

In the area of social functioning, the ALJ determined Plaintiff had mild limitation. (T. 14) Plaintiff indicated she did not want to go places and was nervous in crowds; but, she also reported she spent time with others by telephone and in person, attended church and sporting events for her grandchildren on a regular basis, and she had no problems getting along with family, friends, neighbors or others. Plaintiff also reported she had never been fired or laid off from a job due to problems getting along with other people. (T. 14, 210-17)

In the third functional area of concentration, persistence, or pace, the ALJ determined Plaintiff had no more than mild limitation. (T. 14) Plaintiff reported she was able to pay bills, count change, and handle a savings and checking account. Further, her hobbies included reading and working puzzles on a daily basis. Plaintiff also noted that she did not always finish what she started, but that she could sometimes pay attention and that she followed instructions. (T. 14, 210-17) The ALJ found that Plaintiff had not experienced any episodes of decompensation of extended duration. (T. 14)

Because Plaintiff's medically determinable mental impairments caused no more than mild limitation in any of the first three functional areas, and there were no episodes of decompensation, the ALJ determined Plaintiff's medically determinable mental impairments were non-severe. (T. 14)

The ALJ conducted a proper analysis of Plaintiff's mental impairments. Plaintiff testified that she had depression in 2010 that was treated with medication, but that it has worsened in the last couple of years due to pain, which would be after her DLI of June 30, 2010. The ALJ noted that

records from May, 2009 showed she complained of depression due to the recent deaths of friends or family and was started on Cymbalta. On October 6, 2009, Dr. Miranda noted her depression and anxiety was stable. (T. 13) *See Gates v. Astrue*, 627 F.3d 1080, 10825 (8th Cir. 2010) (finding Plaintiff depression was not severe, because it was situational in nature, related to marital issues, and improved with a regimen of medication and counseling). Further, Plaintiff had not sought inpatient or outpatient mental health treatment. (T. 396) *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Plaintiff's lack of mental health treatment, and the situational nature of her depression, further support the ALJ's finding that Plaintiff's depression and anxiety are not severe.

Plaintiff had the burden of showing a severe impairment significantly limited her mental ability to perform basic work activities. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001). The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairments of degenerative disc/joint disease and microvascular cardiac disease with angina, but not the other alleged impairments.

**RFC Determination:**

Plaintiff argues the ALJ erred in his RFC determination concluding Plaintiff could perform the physical requirements of light work with frequent climbing, balancing, stooping, kneeling, crouching and crawling. (Doc. 10, p. 11) RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records,

observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony at the hearing, disability and function reports, Dr. Miranda's treatment records, Dr. Bebout's orthopedic examination, Dr. Nolewajka's examination records, various medical imaging and diagnostic reports, the state agency medical consultative examinations, as well as Dr. Miranda's RFC assessment. (T. 15-18)

Plaintiff argues the combination of Plaintiff's back and knee pain and additional impairments of fibromyalgia, depression and gastrointestinal problems clearly prevent Plaintiff from standing and walking for six hours per day or lifting the weight required of light work. (Doc. 10, pp. 11-

14) Plaintiff did allege these additional impairments; however, as previously discussed, the medical evidence of record was sparse with regard to these impairments. "A claimant's allegations of disabling pain may be discredited by evidence that he or she has received minimal medical treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis." *See Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986) (citing *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir. 1981)).

A claimant must establish disability prior to the expiration of her insurance to qualify for disability insurance benefits. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (holding that claimant was not entitled to benefits because she did not prove disability existed before her insurance expired on December 13, 2004); *see also Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (holding that only claimant's medical condition as of the date she was last insured is considered). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements). "New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." *Moore*, 572 F.3d at 525 (*citing Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (holding that claimant's non-disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits)). Plaintiff's insurance expired on June 30, 2010. Thus, the ALJ need not consider records after that date, unless they reflect that her disability existed between her alleged onset date and date last insured.

A review of the medical records reveal that the additional impairments alleged by Plaintiff were either stable during June 1, 2010 through June 30, 2010, were not actually diagnosed, or were not being treated. To the extent Plaintiff had fibromyalgia prior to June 30, 2010, there is no evidence of any disabling limitations from it, and any deterioration of that condition began after Plaintiff's disability insurance coverage expired. We also note that a mere diagnosis is not sufficient to prove disability absent some evidence to establish a functional loss from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)

The bulk of Plaintiff's argument rests on Dr. Miranda's MSS he completed on July 24, 2012. (T. 410-12) Dr. Miranda examined Plaintiff on June 11, 2012, finding 4/18 tender points for fibromyalgia. (Tr. 623) On July 24, 2012, when asked to fill out the Firbromyalgia Tender Point Survey, Dr. Miranda found 13/18 tender point for fibromyalgia. (T. 625) The physical RFC evaluation completed by Dr. Miranda on July 24, 2012, concluded Plaintiff was "not physically able to work since May of 2005" and her impairments were "ongoing since 2004." (T. 410-12) The medical evidence in the record, including Dr. Miranda's own treatment records, simply do not support such an opinion. Additionally, these records are two years past the Plaintiff's DLI. Plaintiff's treatment records support the ALJ's RFC determination.

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC

finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The ALJ's RFC was consistent with the medical records and he accounted for Plaintiff's limitations as he found they existed from the record during the relevant time period of June 1, 2010, through June 30, 2010. While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Considering all the evidence of record, the undersigned finds the RFC determined by the ALJ is supported by substantial evidence.

**Weight of Medical Sources:**

The Plaintiff argues that the ALJ committed legal error by giving Dr. Miranda's opinion little weight and failing to clearly and specifically set forth his reasons for disregarding Dr. Miranda's MSS in his opinion. (Doc. 10, p. 14) Plaintiff contends Dr. Miranda's 2012 diagnosis of fibromyalgia and statement in his MSS that her limitations were "ongoing since 2004" is consistent with Dr. Nolewajka's "long-standing position" that her pain was due to fibromyalgia. (Doc. 10, p. 15) Therefore, Plaintiff argues, the timing of Dr. Miranda's diagnosis two years after Plaintiff's DLI is insufficient for the ALJ to discredit Dr. Miranda's opinion. (Doc. 10, p. 15)

The regulations provide that if an ALJ finds a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). However, if

13

the ALJ finds the treating physician's opinion was not entitled to controlling weight, the ALJ utilizes the following factors to assign a weight to the opinion: examining relationship; treatment relationship including the length of the treatment relationship and the frequency of examination and nature and extent of the treating relationship; supportability; consistency; specialization; and, any other factors the Plaintiff brings to the ALJ's attention. 20 C.F.R. § 404.1527(c)(1-6).

The undersigned has reviewed the medical evidence and finds that the ALJ gave valid reasons for discounting the weight of Dr. Miranda's opinion: there were inconsistencies between his treatment records and the report, and the report was largely based upon Plaintiff's subjective complaints of pain with little objective medical support. *See Teague,* 638 F.3d at 650 (the ALJ discounted the medical source statement as it failed to cite clinical test results, observations, or other objective findings as a basis for determining the Plaintiff's capabilities); *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted)("an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

### *Polaski* Credibility Analysis:

Plaintiff argues the ALJ erred in his credibility determination. (Doc. 10, pp. 16-17) It is the ALJ's duty to determine the Plaintiff's RFC. Before doing so, the ALJ must determine the applicant's credibility and how their subjective complaints play a role in assessing RFC. *Pearsall,* 274 F.3d at 1217-18.

The ALJ must give full "consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and

14

treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and, (5) functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d at 883).

15

While an ALJ may not disregard subjective allegations of pain merely because they were not fully supported by objective medical evidence, *Polaski*, 739 F.2d at 751, an ALJ is entitled to make a factual determination that Plaintiff's subjective complaints of pain were not credible in light of objective medical evidence to the contrary. *See* 20 C.F.R. §§ 404.1528, 404.1529 (a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the Plaintiff's statements). In the present case, the ALJ gave multiple valid reasons for finding Plaintiff's subjective complaints not entirely credible, and the Court defers to those credibility findings. See *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence).

The ALJ took into account Plaintiff's subjective complaints of pain by limiting her to light exertional work and provided good reasons for finding Plaintiff's allegations not entirely credible. For instance, the ALJ noted the limited objective medical findings in connection with Plaintiff's allegations of back and lower extremity pain and that according to her cardiologist in July 2010 she was doing well from a cardiac standpoint. (T. 16-18) The ALJ pointed out the conservative nature of treatment she received for her back and leg pain; evidence that her migraines were controlled on medication; her depression was stable on medication and she had not sought professional mental health treatment; her self-reported activities of daily living were not consistent with her allegations of disabling pain and limitations; and, while she indicated she had some side effects from her medications, she had not discontinued a medication due to them. (Tr. 13, 16-17)

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, the Court concludes that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d at 1037 (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

**Step Four Analysis:**

Plaintiff's final argument is that the ALJ erred at step four of his analysis when he determined Plaintiff could return to her past relevant work as a cashier II and cashier/stocker/sales clerk. (Doc. 10, p. 17) At step four, the ALJ determines "whether a claimant's impairments keep [her] from doing past relevant work." *Wagner v. Astrue,* 499 F.3d 842, 853 (8th Cir. 2007) (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996)). If "the claimant has the [RFC] to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

In determining whether Plaintiff could return to her past relevant work, the ALJ considered both what Plaintiff actually performed and the testimony of a Vocational Expert ("VE"), consistent with the *Dictionary of Occupational Titles* ("DOT"), as to what was generally performed in the national economy. The VE testified that the DOT classified Plaintiff's past relevant work as a cashier II and cashier/stocker/sales clerk as light work. (T. 59-60) The VE

17

specifically testified that a hypothetical person with Plaintiff's specific RFC could perform these jobs. (T. 59-60)

With the aid of the VE and Plaintiff's testimony, the ALJ determined Plaintiff was capable of performing light past relevant work as a cashier II and cashier/stocker/sales clerk. (T. 14-15). *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012), citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b); *Wagner*, 499 F.3d at 853-854 (an ALJ can "consider the demands of the claimant's past relevant work either as the claimant actually performed it or, as here, as performed in the national economy.") The ALJ's determination that Plaintiff could perform her past relevant work was substantially supported by objective medical evidence, Plaintiff's testimony, and the testimony of the VE.

## IV.    CONCLUSION

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's Decision denying the Plaintiff benefits. It is recommended that the ALJ's Decision be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 17th day of August, 2016.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE